# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM LOBOU GAMBLE, | CASE NO. CV F 07-01645 LJO WMW HC |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE; DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENTS; DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |
| vs. | |
| R. J. SUBIA, et al., | |
| Respondents. | |

On October 25, 2007, Kim Lobou Gamble ("Petitioner"), a *pro se* California prisoner, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition").[1] On September 10, 2008, R. J. Subia ("Respondent") filed an Answer to the Petition. On October 20, 2008, Petitioner filed a Traverse. Thus, this matter is ready for decision.

## PROCEDURAL HISTORY

On March 11, 2003, Petitioner pled guilty in the Stanislaus County Superior Court to second degree burglary (Cal. Penal Code § 459) and petty theft with a prior conviction (*id.* § 666). (2003 Clerk's Tr. ("CT") 98.) Petitioner also admitted that he sustained three prior felony convictions that were serious felony convictions within the meaning of California's Three Strikes law (Cal. Penal Code

---

[1] Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302, the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

1

§§ 667(b)-(i), 1170.12(a)-(e)), and three prior prison terms (*id.* § 667.5(b)). (2003 CT 56-63.) On July 17, 2003, the superior court sentenced Petitioner to twenty-eight years to life in state prison. (*Id.* 98.)

On July 23, 2003, Petitioner appealed his conviction and sentence to the California Court of Appeal. (2003 CT 100.)[2] On August 11, 2004, the court of appeal remanded the case for the purpose of allowing Petitioner a hearing on a motion to substitute counsel and a hearing on Petitioner's motion to withdraw his guilty plea. (Lodged Doc. ("LD") 4 at 3-4.) On remand, the superior court denied Petitioner's motions to substitute counsel and to withdraw his plea and reinstated Petitioner's conviction and sentence on June 28, 2005. (2004 CT 11, 98.)

In July 2005, Petitioner again appealed to the California Court of Appeal. (2004 CT 99.)[3] On December 14, 2006, the court of appeal affirmed Petitioner's conviction and sentence in a reasoned opinion. (LD 4.) On January 24, 2007, Petitioner filed a petition for review in the California Supreme Court, which summarily denied the petition on February 28, 2007. (LD 5-6.)

On May 27, 2007, Petitioner filed a habeas petition in the Stanislaus County Superior Court, which denied the petition in a reasoned opinion on June 1, 2007. (Pet. 89.)[4] On June 19, 2007, Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied the petition on June 21, 2007. (LD 9-10.) On July 6, 2007, Petitioner filed a habeas petition in the California Supreme Court. (LD 15.) On December 19, 2007, the supreme court denied the petition citing *In re Clark*, 5 Cal. 4th 750 (1993), *In re Dixon*, 41 Cal. 2d 756 (1953), *In re Miller*, 17 Cal. 2d 734 (1941), and *In re Lindley*, 29 Cal. 2d 709 (1947). (LD 16.) On August 16, 2007, Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied the petition on August 23, 2007.

---

[2] Petitioner filed several habeas petitions while his first direct appeal was pending. On January 22, 2004, and April 6, 2004, Petitioner filed habeas petitions in the Stanislaus County Superior Court, which denied the petitions in reasoned opinions on February 2, 2004, and April 6, 2004, respectively. (Pet. at CM/ECF p. 93, 161.) On April 16, 2004, Petitioner filed a habeas petition in the California Court of Appeal, which summarily denied the petition on April 22, 2004. (Lodged Docs. 7-8.) Petitioner then filed a habeas petition on May 20, 2004, in the California Supreme Court, which summarily denied the petition on August 31, 2005. (Lodged Docs. 13-14.)

[3] While Petitioner's second direct appeal was pending, on October 4, 2005, Petitioner filed a federal habeas petition in the United States District Court for the Eastern District of California. *See Gamble v. Kernan*, No. CV F 05-01352 AWI DLB HC (E.D. Cal. Oct. 4, 2005, Doc. 1). On May 30, 2006, judgment was entered dismissing the federal habeas petition without prejudice due to Petitioner's then pending state court direct appeal. *Id.* (Docs. 17-18).

[4] For ease of reference, the Court utilizes the CM/ECF pagination for the Petition.

2

(LD 11-12.)

On October 25, 2007, Petitioner filed the instant federal Petition.

## FACTUAL BACKGROUND[5]

The following facts are taken in pertinent part from the report of the probation officer filed April 4, 2003:

> "On October 14, 2002, at approximately 7:40 p.m., an officer from the Modesto Police Department responded to the Factory 2-U store located at 452 Paradise Road in Modesto, California, regarding a petty theft. Store employee, Sarey Ry, reported she had been working when she observed a black male, later identified as [Petitioner], enter the business through the exit doors. She noted a video camera records everyone entering the store through the entrance, however there is no video camera recording the exit doors. [Petitioner] walked to the men's clothing section and began selecting pants, shirts and jackets from the most expensive racks.... He then grabbed all of the items and walked out of the store without paying. The employee followed [Petitioner] out of the store and asked him if he was going to pay for the items, at which time, [Petitioner] entered a grayish-brown Plymouth Voyager van, license number 2MPC314, which was driven away on Paradise Road by a black female. The estimated value of the property taken from the store was over $400. [¶] ... [¶]
> "On October 15, 2002, at approximately 2:40 a.m., the officer was dispatched to 1019 Colorado Avenue in Modesto, California, regarding a subject banging on the door trying to get in. The residents at the Colorado Avenue address reported [Petitioner] had been trying to get into the residence. He had been yelling at the residents to let him in, claiming he had 'hot clothes' that he would have to throw out if they did not let him in.
> "On October 22, 2002, Sarey Ry positively identified [Petitioner] through a photo lineup as the person responsible for taking the clothing from Factory 2-U. On November 4, 2002, [Petitioner] was arrested at the Stanislaus County Jail, where he was in custody in another case."

(LD 4 at 5.)

## PETITIONER'S CLAIMS

1. Petitioner's sentence of twenty-eight years to life constitutes cruel and unusual punishment under the federal and California Constitutions (Pet. 4);

2. Ineffective assistance of trial counsel (*id.*);

3. Insufficient evidence supported the 1981 assault and 1983 burglary convictions as "serious" felonies under California's Three Strikes law (*id.* 5);

---

[5] The Court adopts the factual background from the December 14, 2006, California Court of Appeal opinion on direct review as a fair and accurate summary of the evidence presented at trial. *See* 28 U.S.C. § 2254(e)(1); *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002).

3

4. [Duplicates Claim Three, *see id.* 5];

5. The use of Petitioner's prior convictions as strikes for his sentence under California's Three Strikes law violates the terms of a prior plea agreement (*id.* 6); and

6. The use of Petitioner's prior convictions for his sentence under California's Three Strikes law violates the California Constitution's ban on impairing existing contracts (*id.*).

## STANDARD OF REVIEW

The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its provisions. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). The standard of review applicable to Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine what, if any, "clearly established" United States Supreme Court law exists, the court may examine decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000) (as amended). On the other hand, a state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law if no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court. *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

A state court decision is "contrary to" clearly established federal law if the decision either applies

a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8.

State court decisions which are not "contrary to" Supreme Court law may only be set aside on federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S. at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 24-25, 27. An "unreasonable application" is different from an "erroneous" or "incorrect" one. *Williams*, 529 U.S. at 409-10; *see also Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Woodford*, 537 U.S. at 25.

A state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

///
///
///
///
///
///

# DISCUSSION[6]

## Claim One

In his first claim, Petitioner contends that his sentence of twenty-eight years to life constitutes cruel and unusual punishment under the federal and California Constitutions . (Pet. 4, 41.) Because the California Supreme Court summarily denied this claim, the Court must "look through" to the last reasoned decision on this claim, that of the California Court of Appeal on direct review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). In denying Petitioner's claim, the court of appeal stated:

> The California Constitution forbids "'cruel *or* unusual punishment,'" whereas the federal Constitution precludes "'cruel *and* unusual'" punishment. (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196, fn. 5.) Thus, if we find [Petitioner]'s punishment does not violate California's Constitution, it cannot violate the Eighth Amendment. Under the California Constitution, the issue balances on whether the sentence "'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Gray* (1998) 66 Cal.App.4th 973, 992.) The case of *In re Lynch* (1972) 8 Cal.3d 410 identified three techniques for courts to make this finding. "'First, they examined the nature of the offense and the offender. [Citation.] Second, they compared the punishment with the penalty for more serious crimes in the same jurisdiction. [Citation.] Third, they compared the punishment to the penalty for the same offense in different jurisdictions. [Citations.]'" (*People v. Gray, supra*, 66 Cal.App.4th at p. 992.) A punishment may be cruel and unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra*, 8 Cal.3d at p. 424; *People v. Dillon* (1983) 34 Cal.3d 441, 478.) Especially relevant to this determination is an examination of "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*In re Lynch, supra*, 8 Cal.3d at p. 425.) In assessing the nature of the offense, a court should consider the circumstance of the particular offense such as the defendant's motive, the way the crime was committed, the extent of the defendant's involvement and the consequences of the defendant's acts. (*People v. Dillon, supra*, 34 Cal.3d at p. 479.) In analyzing the nature of the offender, a court should consider the defendant's "age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)
>
> "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment. [Citations.]" (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) We give great deference to the Legislature's power to set the punishment for a particular crime and to make judgments among various penological approaches. (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1213-1214; *People v. Martinez, supra*, 76 Cal.App.4th at p. 494.) Moreover, it is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality and necessitates an examination of the second and third criteria. (*People v. Meeks* (2004) 123 Cal.App.4th 695, 707.)

---

[6] Respondent argues that several of Petitioner's claims are procedurally defaulted. (*See generally* Answer.) When the claims raised in a habeas petition are easier to resolve on the merits, the interests of judicial economy counsel against deciding the more complex or uncertain procedural default issues. *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) (*citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)); *see also Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982). Because such a situation exists here, the Court addresses Petitioner's claims on the merits.

Under California law, it is well established that cruel and unusual arguments must first be presented to the trial court because they require fact-specific determinations about the offense and the offender. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) [Petitioner] did not argue in the superior court that imposition of a 28-year-to-life sentence would constitute cruel and/or unusual punishment. Therefore, he has waived the right to raise this issue on appeal. While some courts have chosen to resolve the issue despite waiver, we decline to expend judicial resources in this manner.

Nonetheless, we mention that here, just as in *People v. Kelley, supra*, 52 Cal.App.4th 568, [Petitioner] would not have prevailed even if he had preserved the issue.[7] In *Lockyer v. Andrade* (2003) 538 U.S. 63, the United States Supreme Court held that a California Court's imposition of two consecutive 25 years to life sentences was neither contrary to nor an unreasonable application of federal law. (*Id.* at pp. 66, 77.) In *Ewing v. California* (2003) 538 U.S. 11, the Supreme Court held the Eighth Amendment did not prohibit the State of California from sentencing a repeat felon to a prison term of 25 years to life under the state's "'Three Strikes and You're Out'" law. (*Id.* at p. 14.) A plurality of the Supreme Court specifically held:

> "... To be sure, Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated. The State of California 'was entitled to place upon [Ewing] the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State.' [Citation.] Ewing's is not 'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' [Citation.]
> "We hold that Ewing's sentence of 25 years to life in prison, imposed for the offense of felony grand theft under the three strikes law, is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition on cruel and unusual punishments...." (*Ewing v. California, supra*, 538 U.S. at pp. 30-31.)

In the instant case, the nature of the offense and the offender warranted the prison sentence imposed by the trial court. As to the offense, [Petitioner] entered the Factory 2-U store exit door, went directly to the rack of the most expensive men's apparel, and grabbed numerous items. When a store employee confronted [Petitioner] about the need for payment, [Petitioner] simply left the store, placed the attire in a waiting van, and departed on Paradise Road. [Petitioner] never displayed regret for his criminal conduct or suggested the items were taken to ensure sustenance for himself or others. His blatant conduct clearly posed a serious risk to society.

As to the offender, respondent properly points out that [Petitioner] has an extensive criminal history dating back more than two decades. The probation officer summarized his numerous offenses in the following manner:

> "March 21, 1980, Alameda County Superior Court (# 163818), 459 PC,

---

[7] [California Court of Appeal footnote 2:] This conclusion obviates the need for a discussion of [Petitioner]'s contention that trial counsel was ineffective at sentencing by failing to assert a claim of cruel and/or unusual punishment. To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation. (*People v. Hart* (1999) 20 Cal.4th 546, 623-624.) Generally speaking, where—as here—the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for writ of habeas corpus. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

7

|   |   |
|---|---|
| 1 | a felony, 2 years probation, 180 days jail. |
| 2 | "October 22, 1980, Alameda County Superior Court (# 172575), 487 PC, a felony, 3 years probation, 6 months jail. |
| 3 | "July 13, 1981, Alameda County Superior Court (# 72371), 245(a) PC, a felony, 4 years California Department of Corrections. October 19, 1982 paroled from CDC. |
| 4 | "July 1, 1983, Alameda County Superior Court (# 76367), 459 PC, first degree, a felony, 6 years CDC. May 26, 1986, paroled from CDC. March 10, 1988, violation of parole, return to CDC. July 26, 1988, violation of parole, return to CDC. May 23, 1989, violation of parole, return to CDC. |
| 6 | "January 20, 1989, Alameda County Superior Court (# 313885), 10852 VC, a misdemeanor, 2 years probation, 90 days jail. |
| 7 | "May 15, 1989, Sacramento County Superior Court (# 89M07303), 594(b)(3) PC, a misdemeanor, 3 years probation, 10 days jail. |
| 8 | "March 7, 1990, Alameda County Superior Court (# 100982), 211 PC, a felony, 12 years CDC. March 6, 1998, violation of parole, return to CDC. October 1, 1998, violation of parole, return to CDC. August 5, 1999, violation of parole, return to CDC. January 21, 2000, violation of parole, return to CDC. Discharged from parole July 6, 2001. |
| 11 | "December 31, 2001, Alameda County Superior Court (# 472649), 243(E)(1) PC, a misdemeanor, 5 years court probation, 90 days jail. |
| 12 | "October 24, 2002, Stanislaus County Superior Court (# 1048254) 243(b) PC, a misdemeanor, 3 years probation, 60 days jail." |

[Petitioner] acknowledges this rather extensive record but points out the strike offenses occurred in 1981, 1983, and 1990, the most recent being 12 years prior to the commission of the substantive offense charged in the instant case. He also contends the focus of the inquiry on appeal must be on the seriousness of the current offense because it is that offense which must bear the weight of the recidivist penalty. He goes on to argue that he was convicted of two "wobbler" offenses--second degree burglary and petty theft with a prior (Pen. Code, §§ 459, 666). He maintains the trial court could reduce such offenses either by imposing a misdemeanor sentence or by declaring the offenses misdemeanors upon a grant of probation.

The United States Supreme Court essentially rejected these types of arguments in *Ewing v. California, supra*, 538 U.S. at pages 28-29. As to the gravity of the offenses, [Petitioner] was not merely charged with burglary and petty theft with a prior in the instant case. Rather, he was charged with such offenses after having sustained prior serious felony convictions under Penal Code section 667, subdivision (d). As to the status of the offenses as "wobblers," the Supreme Court observed with respect to the grand theft charged in *Ewing v. California, supra*, 538 U.S. at pages 28-29:

> "That grand theft is a 'wobbler' under California law is of no moment. Though California courts have discretion to reduce a felony grand theft charge to a misdemeanor, it remains a felony for all purposes 'unless and until the trial court imposes a misdemeanor sentence.' [Citations.] 'The purpose of the trial judge's sentencing discretion' to downgrade certain felonies is to 'impose a misdemeanor sentence in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, incarceration in a state prison as a felon.' [Citations.] Under California law, the reduction is not based on the notion that a 'wobbler' is 'conceptually a misdemeanor.' [Citation.] Rather, it is 'intended to extend misdemeanant treatment to a potential felon.' [Citation.] In Ewing's case, however, the trial judge justifiably exercised her discretion not to extend such lenient treatment given Ewing's long criminal history.

8

> "In weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism. Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions...."
>
> The 28-year-to-life prison term is not disproportionate to the offense or the offender and does not offend fundamental notions of human dignity. Rather, it is [Petitioner]'s conduct that "offends fundamental notions of human dignity." (*In re Lynch, supra*, 8 Cal.3d at p. 424.) "Fundamental notions of human dignity are not offended by the prospect of exiling from society those individuals who have proved themselves to be threats to the public safety and security." (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1416, disapproved on another point in *People v. Dotson* (1997) 16 Cal.4th 547, 560, fn. 8.) [Petitioner]'s sentence is not shocking or inhumane in light of the nature of the offense and offender and reversal of the judgment of sentence is not required.

(LD 4 at 6-11.)

Increased punishment for recidivists imposed pursuant to state statutory schemes regularly has survived Eighth Amendment challenges. In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court made clear that, in the context of an Eighth Amendment habeas challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer*, 538 U.S. at 73 (*citing Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare," *Rummel*, 445 U.S. at 272, and the Supreme Court has cautioned federal courts to be "reluctant to review legislatively mandated terms of imprisonment for crimes concededly classified and classifiable as felonies," *Hutto v. Davis*, 454 U.S. 370, 374 (1982). *See Rummel*, 445 U.S. at 274. "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on Eighth Amendment grounds." *United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir. 1990).

In *Lockyer*, the Supreme Court concluded that two consecutive twenty-five years to life sentences with the possibility of parole, imposed under California's Three Strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment. *See Lockyer*, 538 U.S. at 77. Similarly, in *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court held that a sentence of twenty-five years to life imposed under California's Three Strikes law for felony grand theft of three golf clubs

did not violate the Eighth Amendment, especially where the defendant had a long history of increasingly violent recidivism. *Cf. Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005) (remanding for examination of the "factual specifics" of each of Reyes' prior convictions in order to "determine whether the offense was a 'crime against a person' or involved violence"); *Rios v. Garcia*, 390 F.3d 1082, 1086 (9th Cir. 2004) (rejecting petitioner's claim that sentence of twenty-five years to life constituted cruel and unusual punishment when current offense was shoplifting $79.98 worth of watches following a minor struggle with a loss prevention officer, and petitioner's lengthy criminal record included two prior robberies that "involved the threat of violence because his cohort used a knife"); *but see Ramirez v. Castro*, 365 F.3d 755, 768-70 (9th Cir. 2004) (finding sentence of twenty-five years to life was grossly disproportionate to the crime committed where the current offense was a "wobbler" felony for the nonviolent shoplifting of a $199 VCR, and the two prior strike convictions arose from one guilty plea relating to nonviolent crimes where no weapons were involved and for which defendant received a sentence of one year in county jail and three years probation).

        In California's Three Strikes law context, the Ninth Circuit has applied the Supreme Court's framework in *Solem* to examine as an initial matter "whether [the petitioner's] extreme sentence is justified by the gravity of his most recent offense and criminal history." *Reyes*, 399 F.3d at 967 (*quoting Ramirez*, 365 F.3d at 768). In applying the test of disproportionality, the Ninth Circuit begins by looking at the "core conduct" of the offender's current conviction and then reviewing the offender's criminal history and the underlying facts of the predicate offenses. *Ramirez*, 365 F.3d at 768. If this analysis "raises an inference of gross disproportionality," *id.* at 770 (*quoting Harmelin*, 501 U.S. at 1005), the court then compares the sentence to those imposed for other crimes in the same jurisdiction, as well as those imposed for the same crime in other jurisdictions, *id.* at 764 (*citing Solem*, 463 U.S. at 292). *See generally Gonzalez v. Duncan*, 551 F.3d 875, 879-91 (9th Cir. 2008) (discussing and applying gross disproportionality principle).

        Preliminarily, to the extent that Petitioner challenges his sentence as a violation of the California Constitution, that claim is not cognizable on federal habeas corpus. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hinman v. McCarthy*, 676 F.2d 343, 349 (9th Cir. 1982).

        In this case, as the court of appeal elaborated, Petitioner's conduct clearly posed a serious risk

to society. As to the gravity of the offense, Petitioner entered the Factory 2-U store exit door, went directly to the rack of the most expensive men's apparel, and grabbed numerous items. When a store employee confronted Petitioner about the need for payment, Petitioner simply left the store, placed the attire in a waiting van, and departed. Petitioner's offense of burglary was a serious crime in which he deprived the rightful owner of property, caused a store employee to confront him, and created a potential for fear and violence. *See People v. McCormack*, 234 Cal. App. 3d 253, 257 (1991) ("Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." (*quoting People v. Gauze*, 15 Cal. 3d 709, 715 (1975))). In addition, Petitioner's counts of burglary and theft of over $400 are more serious than the petitioner's offense in *Lockyer* (two petty theft convictions arising from theft of $153.54 of videotapes), wherein the Supreme Court upheld that petitioner's Three Strikes sentence. *See Lockyer*, 538 U.S. at 66, 77.

Furthermore, as stated by the court of appeal, Petitioner has an extensive criminal history dating back more than two decades. Petitioner's prior history includes first degree burglary, robbery, grand theft, assault with a deadly weapon, and battery convictions. (*See* 2003 CT 71-72.) Petitioner's current offenses are his tenth and eleventh convictions, and Petitioner has now amassed seven felonies. (*See id.*) The series of crimes leading to the current offenses were very serious and most involved a high degree of danger to the victims and the public in general. In addition, Petitioner's current offenses of burglary and petty theft bear a relation to his prior convictions, as he has already been convicted of burglary and grand theft and other more serious offenses against the person such as robbery, assault, and battery. (*See id.*) Furthermore, Petitioner's criminal history is more extensive and serious than the petitioner's in *Lockyer*, whose prior convictions included two counts of misdemeanor theft, at least three counts of residential burglary, and two counts of transportation of marijuana. *See Lockyer*, 538 U.S. at 66-67, 77.

The trial court's imposition of a life term for Petitioner's current convictions does not raise an

"inference of gross disproportionality," in light of the seriousness of Petitioner's triggering convictions and his lengthy criminal history. *Ramirez*, 365 F.3d at 768; *see Lockyer*, 538 U.S. at 77; *Ewing*, 538 U.S. at 11; *Joshua v. Adams*, 231 F. App'x 592, 593-94 (9th Cir. 2007) (upholding twenty-five years to life sentence of offender for stealing two bottles of alcohol with prior convictions of first and second degree robberies).

Accordingly, the Court finds that the California courts' rejection of Petitioner's cruel and unusual punishment claims was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**Claim Two**

In his second claim, Petitioner asserts that his trial counsel was ineffective for failing to object to Petitioner's sentence as cruel and unusual punishment. (Pet. 4, 74.) Because the California Supreme Court summarily denied this claim, the Court must "look through" to the last reasoned decision, that of the California Court of Appeal on direct review. *Ylst*, 501 U.S. at 803-05. In rejecting Petitioner's claim, the court of appeal stated:

> Under California law, it is well established that cruel and unusual arguments must first be presented to the trial court because they require fact-specific determinations about the offense and the offender. (*People v. Norman* (2003) 109 Cal.App.4th 221, 229; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.) [Petitioner] did not argue in the superior court that imposition of a 28-year-to-life sentence would constitute cruel and/or unusual punishment. Therefore, he has waived the right to raise this issue on appeal. While some courts have chosen to resolve the issue despite waiver, we decline to expend judicial resources in this manner.
> Nonetheless, we mention that here, just as in *People v. Kelley, supra*, 52 Cal.App.4th 568, [Petitioner] would not have prevailed even if he had preserved the issue.[8]

(LD 4 at 8.)

For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that

---

[8] [California Court of Appeal footnote 2:] This conclusion obviates the need for a discussion of [Petitioner]'s contention that trial counsel was ineffective at sentencing by failing to assert a claim of cruel and/or unusual punishment. To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment unless counsel was asked for an explanation and failed to provide one or unless there simply could be no satisfactory explanation. (*People v. Hart* (1999) 20 Cal.4th 546, 623-624.) Generally speaking, where—as here—the record does not illuminate the basis for the challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a petition for writ of habeas corpus. (*People v. Pope* (1979) 23 Cal.3d 412, 426.)

counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently prove one of them. *Id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

To prove deficient performance, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will the petitioner prove deficient performance. *Id.* at 690; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Establishing counsel's deficient performance does not warrant setting aside the judgment if the error had no effect on the judgment. *Id.* at 691; *Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir. 1998). A petitioner must show prejudice such that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694. Thus, the petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

Here, defense counsel's failure to object to Petitioner's sentence as a violation of the Eighth Amendment did not constitute deficient performance because, as discussed in Claim One, *supra*, Petitioner's sentence does not constitute cruel or unusual punishment. In addition, defense counsel's failure to object did not prejudice Petitioner because there was no reasonable probability that the trial court would have reversed or lessened Petitioner's sentence, *see supra* Claim One; and in any event, the California Court of Appeal addressed Petitioner's claim on the merits and denied it notwithstanding the procedural bar due to defense counsel's failure to object.

Accordingly, the Court finds that the California courts' rejection of Petitioner's ineffective assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, clearly

established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claims Three & Four

In his third and fourth claims, Petitioner states that insufficient evidence supported the 1981 assault and 1983 burglary convictions as "serious" felonies under California's Three Strikes law. (Pet. 5, 76.) Because the California Supreme Court summarily denied this claim with citations indicating a procedural bar (*see* LD 16; *supra* note 6), the Court must "look through" to the last reasoned decision, that of the Stanislaus County Superior Court on habeas review. *See Ylst*, 501 U.S. at 803-05. In denying Petitioner's claim, the superior court stated:

> Petitioner filed a Writ of Habeas Corpus on May 27, 2007 challenging the sufficiency of the evidence that his strike priors were serious felonies. He also asserts that he as [sic] not informed that his priors were strike offenses.
> . . . .
> Petitioner further asserts that the Penal Code 969b packet was insufficient to prove that his priors were strikes. In this matter Petitioner admitted the strike priors when he entered a guilty plea admitting all priors on March 11, 2003. The court did not rely on the 969b packets. Further, the waiver of plea forms establishing the priors which were part of Petitioner's Writ filed 1/22/04 show that Petitioner pled to 245 P.C., Assault with Deadly Weapon with Use and 459 P.C., First Degree. Both convictions are strikes under the Three Strikes Law.
> Petitioners [sic] Writ is hereby DENIED.

(Pet. 89.)

Normally, the Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, the Supreme Court has "not extended *Winship*'s protections to proof of prior convictions used to support recidivist enhancements." *Dretke v. Haley*, 541 U.S. 386, 395 (2004) (*citing Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *Apprendi v. New Jersey*, 530 U.S. 466, 488-490 (2000)).

Preliminarily, the Court notes that Petitioner admitted his prior convictions for the 1981 assault and the 1983 burglary, admitted that the 1983 burglary was of the first degree, and admitted that both convictions were "serious" felonies for the purpose of California's Three Strikes law. (*See* 2003 Rep.'s

Tr. ("RT") 79-81.)[9]

Notwithstanding Petitioner's admission, sufficient evidence supported the finding that Petitioner's 1981 assault and 1983 burglary convictions were "serious" for the purposes of California's Three Strikes law. Attached to Petitioner's federal Petition are: (1) an Abstract of Judgment dated November 5, 1981, which shows Petitioner's conviction for assault with a deadly weapon on July 13, 1981 (Pet. 172); (2) a July 13, 1981, Reporter's Transcript in which Petitioner pled guilty to assault with a deadly weapon and admitted that he had personally used a firearm in that offense (*id.* 174-79); and (3) a plea form filed on July 13, 1981 (*id.* 185). As to the first degree burglary, attached to Petitioner's federal Petition are: (1) a July 1, 1983, Reporter's Transcript in which Petitioner pled guilty to first degree burglary (Pet. 192-99); and (2) a plea form filed on July 1, 1983 (*id.* 202). The 1981 assault with a deadly weapon conviction and the 1983 first degree burglary conviction are both "serious" crimes for purposes of California's Three Strikes law. *See* Cal. Penal Code §§ 1170.12(b)(1) (California's Three Strikes law), 1192.7(c)(18) (first degree burglary), (31) (assault with a deadly weapon); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) (stating a federal court must refer to the relevant state statutory provisions); *see also Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (stating a federal court in habeas proceedings must defer to the state courts' interpretation of state law).

Accordingly, the Court finds that the California courts' rejection of Petitioner's insufficient evidence claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## Claim Five

In his fifth claim, Petitioner argues that the use of his prior convictions as strikes for his sentence under California's Three Strikes law violates the terms of a prior plea agreement. (Pet. 6, 81, 100.) Because the California Supreme Court summarily denied this claim with citations indicating a procedural bar (*see* LD 16; *supra* note 6), the Court must "look through" to the last reasoned decision,

---

[9] In reciting Petitioner's prior 1983 burglary conviction, the trial court mistakenly stated "July 13th, 1981," as the date of conviction (*see* 2003 RT 80); Petitioner's actual date of conviction for that burglary was July 1, 1983 (*see* 2003 CT 72; Pet. 192-99, 202). Petitioner does not challenge this ministerial error, but instead challenges the evidence supporting whether his prior convictions were "serious." (*See* Pet. 76-79.)

that of the Stanislaus County Superior Court on habeas review. *See Ylst*, 501 U.S. at 803-05. In denying Petitioner's claim, the superior court stated:

> Petitioner filed a Writ of Habeas Corpus on May 27, 2007 challenging the sufficiency of the evidence that his strike priors were serious felonies. He also asserts that he as [sic] not informed that his priors were strike offenses.
> The pleas to the strike priors occurred on July 13, 1981 and July 1, 1983, prior to the enactment of the Three Strikes Law. (See Petitioner's Writ of Habeas Corpus filed in 1/22/04). The trial judge could not predict that the offenses would become strikes more than 10 years after the plea and was therefore under no obligation to inform Petitioner of future consequences under the Three Strikes Law.
> . . . .
> Petitioners [sic] Writ is hereby DENIED.

(Pet. 89.)

Due process guarantees under the Fifth Amendment require that a defendant's guilty plea be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir. 1988). A plea of guilty is voluntary only if it is "entered by one fully aware of the *direct* consequences" of his plea. *Torrey*, 842 F.2d at 235 (*quoting Brady v. United States*, 397 U.S. 742, 755 (1970)) (citation and internal quotation marks omitted). "[A]lthough a defendant is entitled to be informed of the direct consequences of the plea, the court need not advise him of all the possible collateral consequences." *Id.* (internal quotation marks omitted); *accord United States v. Amador-Leal*, 276 F.3d 511, 514 (9th Cir. 2002).

"The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Torrey*, 842 F.2d at 236 (internal quotation marks omitted). "In many cases, the determination that a particular consequence is 'collateral' has rested on the fact that it was in the hands of another government agency or in the hands of the defendant himself." *Id.* "In determining the voluntariness of a plea and whether it has been made intelligently, the court cannot be required to foresee an accused's future conduct and to predict all possible alternative ramifications thereof." *Id.* "The possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on an instant conviction is not a direct consequence of a guilty plea." *United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir. 1990).

In addition, under California law, plea bargains are interpreted according to contract law

principles, *see Buckley v. Terhune*, 441 F.3d 688, 694-95 (9th Cir. 2006) (en banc), and a criminal defendant has a due process right to enforce the terms of his plea agreement, *id.* at 694 (*citing Santobello v. New York*, 404 U.S. 257, 261-62 (1971)). Plea bargains are "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws." *Davis v. Woodford*, 446 F.3d 957, 962 (9th Cir. 2006) (citation and internal quotation marks omitted).

Here, to the extent Petitioner alleges that imposition of a life sentence under California's Three Strikes law violates the terms of his 1981 assault, 1983 burglary, or 1990 robbery convictions, his claim is without merit. First, use of Petitioner's prior convictions as strikes under California's Three Strikes law is not a "direct consequence" of his plea agreement. This is because the use of the convictions as strikes was not a result that represented a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Torrey*, 842 F.2d at 236. The use of Petitioner's prior convictions as strikes is rather a "collateral consequence" in "the hands of the defendant himself," *id.*; "[t]he possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on an instant conviction is not a direct consequence of a guilty plea," *Brownlie*, 915 F.2d at 528. Therefore, the trial courts were not required to advise Petitioner of the potential use of his convictions as enhancements under California's Three Strikes law; nor could they, as California's Three Strikes law was passed in 1994, after the prior convictions at issue. *See* 1994 Cal. Legis. Serv. Prop. 184 (West); 1994 Cal. Legis. Serv. Ch. 12 (A.B. 971) (West).[10]

Second, none of Petitioner's plea agreements contains an express term limiting the State's power to use his convictions for future sentencing enhancements. (*See* Pet. 172-186, 192-203, 205-18.) In addition, nothing in the record suggests that Petitioner, much less the State, understood the plea agreements to limit future enhancements based on Petitioner's prior convictions. Furthermore, the comments of the judges during each of Petitioner's plea proceedings neither explicitly nor implicitly altered the terms of Petitioner's plea agreements. (*See id.* 174-82, 192-200, 207-18.) For example, the judge's statements at Petitioner's 1990 plea proceeding that (1) "if [Petitioner] happen[s] to get arrested and convicted in the future on a serious felony and the judge in this case decides to send you to prison,

---

[10] In his Petition, Petitioner explicitly states that he is not raising any Ex Post Facto claims in relation to California's Three Strikes law. (*See* Pet. 100.)

17

he is going to have to add five years to your sentence for this case today" (Pet. 210), and that (2) "because [Petitioner] already [has] two prior serious felonies . . . you're talking about 15 years in prior offenses" (*id.*), merely described the consequences of Petitioner's plea under then-existing law; the statements were not a promise to limit the State's future use of those convictions. Petitioner's plea agreements are "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws," *Davis*, 446 F.3d at 962, such as California's Three Strikes law.

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## **Claim Six**

In his sixth and final claim, Petitioner contends that the use of his prior convictions for his sentence under California's Three Strikes law violates the California Constitution's ban on impairing existing contracts. (Pet. 6, 81, 101.)

A petitioner may not obtain federal habeas relief by alleging the violation of a state constitution. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68; *Hinman*, 676 F.2d at 349. Thus, Petitioner's allegation of the violation of the California Constitution is not cognizable on federal habeas corpus.

Accordingly, the Court finds that the California courts' rejection of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## **Certificate of Appealability**

An applicant seeking to appeal a district court's dismissal of a habeas petition under 28 U.S.C. § 2254 must first obtain a certificate of appealability ("COA") from a district judge or circuit judge. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A judge should either grant the COA or state reasons why it should not issue, and the COA request should be decided by a district court in the first instance. Fed. R. App. P. 22(b)(1); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

The applicant for a COA must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529

U.S. 473, 483 (2000). A "substantial showing" is defined as a demonstration (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues differently; or (3) that issues are adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see Slack*, 529 U.S. at 483-84 (stating that except for substituting the word "constitutional" for the word "federal," § 2253 codified the pre-AEDPA standard announced in *Barefoot v. Estelle*).

Where, as present here, a district court has rejected constitutional claims on their merits, the COA standard is straightforward. "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court has reviewed the record of this case and finds that reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. On the merits of this case, reasonable jurists would not debate the constitutionality of Petitioner's conviction and sentence. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court DENIES the Petition for Writ of Habeas Corpus with prejudice and DECLINES the issuance of a certificate of appealability. The Clerk of Court is ORDERED to enter Judgment for Respondents and to close Case No. CV F 07-01645 LJO WMW HC.

IT IS SO ORDERED.

**Dated:   March 11, 2009**                              **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES DISTRICT JUDGE